UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
 DALE BERNARD,                                            :

                                                                       09 Civ. 3740 (GWG)
                           Petitioner,                    :

                                                                       OPINION & ORDER
                           -v.-                           :

WENDY ROAL, Warden, Federal Prison Camp       :
Duluth et al.,

                                                          :
                           Respondents.
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Petitioner Dale Bernard, proceeding pro se, brings this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 and also makes a challenge under the Administrative

Procedure Act ("APA") (codified in scattered sections of 5 U.S.C.).  Bernard is currently an

inmate at the Federal Prison Camp in Duluth, Minnesota.  The parties have consented to the

disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

I.      BACKGROUND

        A.      Procedural History

        On April 13, 2009, Bernard, an inmate in federal custody, filed a complaint challenging

certain actions of the Bureau of Prisons ("BOP"), see Complaint, filed Apr. 13, 2009 (Docket #

2) ("Complaint"), which this Court construed both as a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241 and as a complaint seeking review of agency action pursuant to the

APA.  See Order, filed May 1, 2009 (Docket # 6).  After the Government opposed the petition,

see Respondent-Defendants' Memorandum of Law in Opposition to Petition for Writ of Habeas

Corpus and in Support of Motion to Dismiss Complaint, filed July 16, 2009 (Docket # 14) at 4-9,

the Court ruled that a number of Bernard's claims were meritless or moot.  Bernard v. Roal,

2010 WL 93160, at *3 (S.D.N.Y. Jan. 11, 2010).  But the Court also concluded that Bernard's

complaint should be construed as raising several claims that were not addressed by the

Government.  See id.  Accordingly, the Court directed the Government to file new papers

addressing these claims.  See id.  The Court also gave Bernard permission to clarify his claims to

the extent that he believed that the Court's interpretation of his claims was not accurate.  See id.

Both the Government and Bernard have since filed additional papers.  See Respondent-

Defendants' Supplemental Memorandum of Law in Opposition to Petition for Writ of Habeas

Corpus and in Support of Motion to Dismiss the Complaint, filed Mar. 4, 2010 (Docket # 33);

Declaration of Alicia M. Simmons, filed Mar. 4, 2010 (Docket # 32) ("Simmons Decl.");

Plaintiff's Supplemental Memorandum of Law in Support of Writ of Habeas Corpus and in

Opposition to Motion to Dismiss the Complaint, filed May 13, 2010 (Docket # 35) ("Pet. Suppl.

Mem.").

B.      Bernard's Remaining Claims

Bernard's suit challenges the timing of his consideration for placement in a Residential

Drug Abuse Program ("RDAP"), including how that consideration impacts on his eligibility for

placement in a Residential Re-Entry Center ("RRC") and on his eligibility for early release.  See

Complaint ¶¶ 23-34.  In its previous decision, the Court summarized Bernard's claim regarding

timing as follows:

> (1) an inmate must complete the RDAP prior to being placed in a Residential Re-
> Entry Center ("RRC"), which is a form of community corrections placement;
> (2) the RDAP program by itself lasts nine months; (3) Congress has mandated
> that an inmate may spend up to 12 months in an RRC [see 18 U.S.C. §
> 3624(c)(1)]; and (4) inmates are eligible for up to a 12-month reduction in their
> overall sentence upon completion of [a drug treatment program].[1]  Accordingly,

[1] The Court's original statement referred to "completion of the RRC."  This was
incorrect, however, as the sentence reduction is an incentive for successful completion of drug

> Bernard argues, an inmate would have to be considered for placement in the RDAP 33 months prior to his sentence completion date for there to be any hope for the full range of placements and the sentence reduction contemplated by Congress.  Because Bernard's projected release date is August 10, 2012, the 33-month date passed in November 2009 without Bernard having been considered for placement in the [RDAP].[2]  Bernard asserts that the BOP "leaves no opportunity for <u>consideration</u> for the full amount of the incentives that the BOP, itself, has determined the plaintiff is eligible for."
>
> Separately, Bernard notes that, under BOP policy, consideration for RRC placement does not take place until between 17-19 months prior to the inmate's projected release date.  Bernard alleges that this too violates the governing statutes because the BOP allows only 19 months at most for both the RRC placement and a sentence reduction – instead of the 24 months contemplated by statute. Finally, Bernard's later papers challenge a BOP policy that permits placement in an RRC for periods of more than 6 months only in "unusual and extraordinary circumstances."

<u>Bernard</u>, 2010 WL 93160, at *1-2 (citations omitted).  Accordingly, the Court construed

Bernard's complaint as challenging the following three matters:

> (1) the BOP policy to consider inmates (including Bernard) for RRC placement no longer than 19 months prior to the inmate's projected release date; (2) the BOP's failure to consider inmates (including Bernard) for placement in the RDAP program 33 months before his projected release date; and (3) the alleged BOP policy requiring "extraordinary" circumstances for placements in an RRC beyond six months.

<u>Id.</u> at *3.  In a later letter, Bernard indicated that he agreed with the Court's characterization of

his claims and also stated:

> that the BOP policy limiting consideration for RRC placement to 19 months before release was promulgated in violation of the APA.  In addition, Bernard argues that the BOP's policy requiring "extraordinary" circumstances for RRC placements beyond 6 months also violates the APA.

Memorandum Endorsed, filed Feb. 3, 2010 (Docket # 30).

---

treatment.  <u>See</u> 18 U.S.C. § 3621(e)(2)(B).

[2] The original decision referred to an "RRC" but should have referred to an "RDAP."

II.      DISCUSSION

          A.  Habeas Corpus

28 U.S.C. § 2241(c)(3) allows for issuance of a writ of habeas corpus for any prisoner

who is in custody in violation of the laws of the United States.  As the Second Circuit has noted,

a section 2241 motion properly challenges matters such as "the administration of parole,

computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison

transfers, type of detention and prison conditions."  Levine v. Apker, 455 F.3d 71, 78 (2d Cir.

2006) (citation, emphasis, and internal quotation marks omitted).  Accordingly, we examine

Bernard's claims to determine if Bernard's custody violates any of the federal laws he cites.

          Each of Bernard's claims turn on the resolution of two issues: (1) whether the timing of

Bernard's placement in the RDAP and RRC must come early enough to allow for the potential of

a full one-year sentence reduction that is contemplated by 18 U.S.C. § 3621(e)(2)(B) for certain

prisoners who complete a drug treatment program; and (2) whether Bernard is entitled by virtue

of 18 U.S.C. § 3624(c)(1) to be considered for placement in an RRC at a time when he can

potentially be placed in the RRC for up to 12 months.  We discuss each issue separately.

Because, as is described below, Bernard cannot prevail on either issue, he cannot show that his

confinement is in violation of federal law.

          1. One-Year Sentence Reduction

          Section 3621(e)(2)(A) provides that a prisoner who completes residential substance

abuse treatment, such as an RDAP program, "shall remain in the custody of the Bureau under

such conditions as the Bureau deems appropriate."  For nonviolent offenders, the period the

prisoner remains in custody after completing a treatment program "may" be reduced by the BOP

by up to one year.  18 U.S.C. § 3621(e)(2)(B).  The statute provides that enrollment in treatment

programs is subject to availability of appropriations and is to be "based on an eligible prisoner's

proximity to release date."  Id. § 3621(e)(1)(C).

Bernard is still on a waiting list for RDAP placement because other inmates with early

release dates are given priority over him.  See Declaration of Traci Amundson (annexed as Ex. D

to Simmons Decl.) ("Amundson Decl.") ¶¶ 3-4; Pet. Suppl. Mem. at 2.  While the expected

result of this delay may be that, as a practical matter, Bernard will not be able to obtain a

sentence reduction of one year, nothing in the statute requires the BOP to ensure that each

inmate be put in a position where he is eligible for that reduction.  Thus, courts reviewing habeas

petitions challenging the BOP's decision to not award release after drug treatment have held that

"[t]he federal statute creating the RDAP provides that early release is discretionary," and

therefore "completion of the RDAP does not automatically entitle [a prisoner] to early release."

Hartman v. Zickefoose, 2007 WL 1097081, at *1 (D. Conn. Apr. 4, 2007) (citation omitted); see

also Hickerson v. Willingham, 2006 WL 3422186, at *2 (D. Conn. Nov. 28, 2006) (petitioner is

not automatically entitled to early release as a direct result of completing RDAP); LaSorsa v.

Spears, 2 F. Supp. 2d 550, 556 (S.D.N.Y. 1998), aff'd,1999 WL 459773 (2d Cir. June 22, 1999)

("BOP does have discretion nonetheless to deny early release").

Notably, the timing of Bernard's original interview for RDAP placement was appropriate

to potentially permit him to complete nine months of drug treatment followed by a 12-month

RRC placement and also receive a 12-month sentence reduction.  Bernard was originally

interviewed for RDAP placement more than 38 months prior to his scheduled release date.  See

Declaration of Patricia Griffin (annexed as Ex. C to Simmons Decl.) ("Griffin Decl.") ¶ 3.

Unfortunately, Bernard's enrollment in the RDAP has been delayed because of limited space and

the fact that his enrollment is secondary to other prisoners with earlier release dates.  See

Amundson Decl. ¶ 4.  But there is nothing in the statute that requires the BOP to put Bernard in a situation where he will benefit from a full year reduction of his sentence.

## 2.  RRC Placement

We now turn to the question whether Bernard is being properly considered for an RRC placement.  The governing statute, which was amended in 2008 by an enactment referred to as the "Second Chance Act of 2007," Pub. L. No. 110-199, 122 Stat. 657 (2008) ("the Act"), is codified in relevant part at 18 U.S.C. § 3624(c)(1).  It provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

On April 14, 2008, the BOP issued a memorandum entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007," which instructed that RRC placement be based on individualized review of each inmate's case.  See Memorandum for Chief Executive Officers, dated Apr. 14, 2008 (annexed as Ex. 13 to Simmons Decl.) ("Apr. 14, 2008 Mem."), at 2.  The April 14, 2008 memorandum notes that, under the Act, "[t]he pre-release RRC placement timeframe is increased to a maximum allowable 12 months."  Id. at 2.  It further states that:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Id. at 4.  Petitioner has also appended to his complaint another memorandum, apparently originating from the BOP, entitled "RRC Placement & the Second Chance Act," and which is

marked "last updated: 09-03-2008." See Ex. 3 to Complaint ("Sept. 3, 2003 Memo").  This

document, which describes the terms of the Second Chance Act, states generally that "[t]he

BOP's goal is to place inmates in RRCs for the amount of time necessary to provide the greatest

likelihood of successful re-entry into the community." Id.  It concludes,

> Because the Second Chance Act prescribes the maximum amount of time for
> which inmates are eligible for pre-release RRC placement as 12 months, BOP
> staff are reviewing each inmate for pre-release RRC placement 17-19 months
> before the inmate's projected release date.  Notwithstanding the statutory cap of
> 12 months, it is the BOP's experience that inmates' re-entry needs can usually be
> met with 6 months or less in an RRC.  An RRC placement beyond 6 months will
> only be approved upon a showing of an inmate's extraordinary and compelling re-
> entry needs.  The BOP will continue to balance each inmate's individual needs
> with the agency's duty to use its limited resources judiciously and to provide re-
> entry services as to as many inmates as possible.

Id.[3]

Both of the BOP memoranda state that prison officials will review a prisoner for RRC

placement between 17 to 19 months before his scheduled release date.  See id.; Apr. 14, 2008

Mem. at 3.  This time period allows for the possibility that Bernard could be placed in such a

program for up to 12 months, and therefore, does not violate federal law by foreclosing the

possibility that he could obtain community confinement placement for the maximum term

---

[3] On October 21, 2008, interim regulations were enacted regarding placements, see Pre-Release Community Confinement, 73 Fed. Reg. 62440-01 (Oct. 21, 2008) (to be codified at 28 C.F.R. 570), that essentially mirror the statutory language regarding the potential for a 12-month placement.  See 28 C.F.R. § 570.21(a) ("[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"); 28 C.F.R. § 570.22 ("[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.").  While some courts have asserted that these regulations were meant to supersede the BOP's internal memoranda that created a presumptive six-month limit on RRC placement, see, e.g., Ramirez v. Hickey, 2010 WL 567997, at *4 (E.D. Ky. Feb. 12, 2010); Loving v. Jett, 2009 WL 2960710, at *3 (D. Minn. Sept. 10, 2009), the Government does not make that argument here.  Accordingly, we do not consider the interim regulations further.

allowed by the statute.

Bernard also argues that these documents improperly create a presumption that six

months is the appropriate time period for an RRC placement.  See Complaint ¶ 28; Pet.

Response at 2.  The Second Chance Act, however, affords discretion to the BOP to decide the

length of re-entry placement.  First, section 3624(c)(1) directs the BOP to permit 12-months

placement in re-entry programs only "to the extent practicable."  Furthermore, it provides that

such programs "may include a community correction facility," id, such as an RRC.  The

language of section 3624(c)(1) thus grants considerable discretion to the BOP as to the

placement of inmates in re-entry programs.

The memoranda Bernard cites are not inconsistent with the statute.  Rather, they codify

the BOP's expertise in the area.  As one court put it: "[w]hile the statute allows for a maximum

of twelve months in an RRC placement, it is clear that the recommendation for such placement is

discretionary.  The memorandum to which petitioner objects merely sets forth the BOP's

experience with pre-release placement."  Ebeck v. Anderson, 2010 WL 234726, at *2 (W.D. Mo.

Jan. 13, 2010).  Thus, courts have regularly rejected claims that the BOP could not properly

create a presumption that a six-month placement is sufficient.  See, e.g., McDonald v. Obama,

2010 WL 1526443, at *6 (M.D. Pa. Mar. 15, 2010) ("The use of the word 'may' in § 3624, has

led courts to consistently hold that the Act creates no absolute, enforceable legal right to a 12-

month RRC placement for any prisoner." (citations omitted)); Sessel v. Outlaw, 2009 WL

1850331, at *4-6 (E.D. Ark. June 25, 2009) (petitioner received individualized review of re-entry

needs despite six-month presumption); Stanko v. Rios, 2009 WL 1303969, at *5 (D. Minn. May

8, 2009) (six-month presumption does not violate § 3642(c) but merely "supplies a guideline that

the BOP uses when exercising its discretion." (citation omitted)).

The Court recognizes that two cases have reached a contrary result.  See Krueger v. Martinez, 665 F. Supp. 2d 477, 482-83 (M.D. Pa. 2009); Strong v. Schultz, 599 F. Supp. 2d 556, 563 (D.N.J. 2009).  Krueger concluded that "the BOP has functionally placed a lid on the discretion that it wants its staff to exercise," and that "the institutional preference for a RRC placement of six months or less . . . is contrary to the apparent purpose of the Second Chance Act."  Krueger, 665 F. Supp. 2d at 483.  Strong reached a similar conclusion and also found that the requirement that written concurrence be obtained of the Regional Director "impermissibly constrains staff's discretion."  599 F. Supp. 2d at 563.

The Second Chance Act, however, does not vest discretion in "staff" but rather in the Director of the Bureau of Prisons, and thus it is consistent with the statute for the BOP to mandate the involvement of a particular official subordinate to that director in exercising its discretion.  As for the memoranda's statement that RRC placements beyond six months are to be approved only upon an "extraordinary" showing, such a requirement has been upheld as consistent with the exercise of administrative discretion because it constitutes "a standard for deciding whether to grant a request for extended placement in an RRC."  Miller v. Whitehead, 527 F.3d 752, 757 (8th Cir. 2008) (construing prior version of 18 U.S.C. § 3624(c)); see also Stokes v. Norwood, 2010 WL 1930581, at *8 (D.N.J. May 12, 2010) (citing Miller in concluding "extraordinary justification" serves as a "legitimate standard" to decide RRC placement); Lewis v. Outlaw, 2010 WL 1198179, at *3 (E.D. Ark. Mar. 23, 2010) (same); Snyder v. Angelini, 2008 WL 4773142, at *3 (E.D.N.Y. Oct. 27, 2008) (same).

Furthermore, the limitation on access to the RRC "is rationally related to one of the statutory factors which govern prison placements; namely, the allocation of limited available prison resources."  McDonald, 2010 WL 1526443, at *8 (citing 18 U.S.C. § 3621(b)).  Finally,

the BOP has not yet been called upon to make a determination of Bernard's placement in an

RRC, and thus there is no basis on which to conclude that the determination in his case will fail

to comply with the statute.  Wires v. Bledsoe, 2010 WL 427769, at *11 (M.D. Pa. Feb. 3, 2010)

("Unlike Strong, the petitioner has provided no reason why he requires more than six months of

pre-release placement, other than that it would give him the greatest likelihood of successful

reintegration.").

In sum, Bernard has not shown that the BOP has acted in violation of federal law in the

timing of the consideration of his placements.

### B.  APA

Bernard's APA claims fare no better.  The APA provides that courts may not review

agency action when "(1) statutes preclude judicial review; or (2) agency action is committed to

agency discretion by law."  5 U.S.C. § 701(a).  18 U.S.C. § 3625 states that the APA is

inapplicable "to the making of any determination, decision, or order under this subchapter,"

which includes placements pursuant to section 3621.  Thus, the statute would have barred any

challenge to Bernard's own placement had he made one.  See Black v. Sabol, 2009 WL

3460779, at *2 (D. Mass. Oct. 22, 2009).  To the extent that Bernard is challenging the BOP

memoranda as not having been issued in accordance with the notice and comment provisions of

the APA, the memoranda are statements of policy or internal guidelines, and thus are exempt

from those procedures.  See McGee v. Thomas, 2009 WL 2182385, at *8-9 (D. Or. July 22,

2009).

### Conclusion

The petition for writ of habeas corpus is denied and the Government's motion to dismiss

is granted.  The Government is directed to send to plaintiff, within 14 days, a copy of each of the

unpublished decisions cited in this Opinion.   The Clerk is requested to enter judgment and close

this case.

SO ORDERED.

Dated: June 10, 2010
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Dale Bernard
(# 25242-038)
Federal Prison Camp-Duluth
P.O. Box 1000
Duluth, MN 55814

Richard Bernard
49 Dufton Road
Andover, MA 01810

Alicia M. Simmons
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

unpublished decisions cited in this Opinion.   The Clerk is requested to enter judgment and close

this case.

SO ORDERED.

Dated: June 9, 2010
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Dale Bernard
(# 25242-038)
Federal Prison Camp-Duluth
P.O. Box 1000
Duluth, MN 55814

Richard Bernard
49 Dufton Road
Andover, MA 01810

Alicia M. Simmons
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

11